James B. Bear (Bar No. 43,816)
Brenton R. Babcock (Bar No. 162,120)
John W. Holcomb (Bar No. 172,121)
J. David Evered (Bar No. 215,974)
Philip M. Nelson (Bar No. 229,225)
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone: (949) 760-0404
Facsimile: (949) 760-9502

Attorneys for Plaintiffs/Counterdefendants
CIMCORE CORPORATION, ROMER, INC., HOMER EATON,
and HEXAGON METROLOGY, AB

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CIMCORE CORPORATION, a California corporation, ROMER, INC., a California corporation, HOMER EATON, an individual, and HEXAGON METROLOGY, AB, a Swedish limited liability company,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>FARO TECHNOLOGIES, INC., a Florida corporation,<br><br>　　　　Defendant.<br><br>FARO TECHNOLOGIES, INC., a Florida corporation,<br><br>　　　　Counterclaimant,<br><br>　　v.<br><br>CIMCORE CORPORATION, a California corporation, ROMER, INC., a California corporation, HOMER EATON, an individual, and HEXAGON METROLOGY, AB, a Swedish limited liability company,<br><br>　　　　Counterdefendants. | Civil Action No. 03-CV-2355 B(WMc)<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW**<br><br>Hon. Rudi M. Brewster<br><br>Hearing<br>Date:　TBD<br>Time:　TBD<br>Ctrm:　2 |

1       Plaintiffs CimCore Corporation, Romer, Inc., Homer Eaton,
2   and Hexagon Metrology, AB ("Romer") submit this memorandum in
3   support   of   Plaintiff's   Opposition   to   Defendant   Faro
4   Technologies, Inc.'s ("Faro") Motion for Judgment as a Matter
5   of Law.

6                        I.  INTRODUCTION

7       Faro's memorandum in support of its motion for Judgment
8   as a Matter of Law ("Faro Mem.") restates Faro's arguments
9   that were previously rejected by the court when Faro moved for
10  Summary Judgment of Non-infringement.[1]  As before, Faro's non-
11  infringement arguments are legally insufficient because Faro
12  merely presents an alternative labeling scheme that ignores
13  the patent's teachings.  Indeed, if claims read directly on an
14  accused device, the fact that a defendant can conceive of an
15  alternative reading does not defeat infringement.   Faro's
16  labeling, although convenient for Faro's theory of non-
17  infringement, does not merit Judgment for Faro because Faro's
18  labeling scheme would even exclude the preferred embodiment
19  described in the '148 patent.[2]   Thus, Faro's labels are a
20  contrivance   and   not   a   legally   relevant   alternative.

21  _____

22        [1]     Decl. of Philip M. Nelson ("Nelson Decl."), Ex. 1.

23        [2]     See Modine Mfg. Co. v. United States Int'l Trade
    Comm'n, 75 F.3d 1545, 1550 (Fed. Cir. 1996) ("[A] claim
24  interpretation that would exclude the inventor's device is
    rarely the correct interpretation [and] requires highly
25  persuasive evidentiary support."); Vitronics Corp. v.
    Conceptronic, Inc., 90 F.3d 1576, 1583 (Fed. Cir. 1996) (A
26  claim construction that would not cover a preferred embodiment
    in the specification "is rarely, if ever, correct and would
27  require highly persuasive evidentiary support."); Desper
    Prods., Inc. v. QSound Labs, Inc., 157 F.3d 1325, 1332-33
28  (Fed. Cir. 1998).

1   Furthermore, Faro's creation of an alternative labeling scheme
2   is irrelevant to whether or not Romer has met its burden of
3   reading the claims on to the accused device to show
4   infringement.   As demonstrated below, the evidence at trial
5   has included systematic and detailed readings of the claim
6   limitations on to the accused Faro products.

7       Faro's argument that the software change defeats
8   infringement is incorrect because the asserted claims are not
9   method claims, and Faro has made no change to the structure
10  shown to be infringing at trial.

11      Faro's argument that the asserted claims of the '148
12  Patent are indefinite is incorrect because the claims are not
13  "insolubly ambiguous."

14      For these reasons and those set forth more fully below,
15  Faro's motion for judgment as a matter of law should be
16  denied.

17  II.  **THE LEGAL STANDARD FOR JUDGMENT OF NONINFRINGEMENT AS A
         MATTER OF LAW HAS NOT BEEN MET**
18      In considering a grant of summary judgment as a matter of
19  law after presentation of a plaintiff's case, "the plaintiff's
20  facts must be accepted as established and all reasonable
21  inferences from those facts must be drawn in the plaintiff's
22  favor."[3]  If reasonable minds could differ as to the import of
23  the evidence, JMOL should be denied.[4]

24

25  _____

26      [3]  Allied Colloids Inc. v. Am. Cyanamid Co., 64 F.3d
    1570, 1572-73 (Fed. Cir. 1995); see Southwest Software, Inc.
27  v. Harlequin Inc., 226 F.3d 1280, 1289 (Fed. Cir. 2000).

28      [4]  Anderson v. Liberty Lobby, 477 U.S. 242, 250 (1986).

1    III.  **ROMER HAS MET ITS BURDEN TO DEMONSTRATE INFRINGEMENT**

2        At  trial,  Romer  has  met  and  exceeded  its  burden  on

3    showing  infringement.  For  example,  Romer's  experts  have  used

4    detailed  figures  and  presentations  developing  and  explaining

5    the  following  infringement  labeling  diagrams:



Dem. Ex. 93, Nelson Decl., Ex. 2



Dem. Ex. 95-A, Nelson Decl., Ex. 3

3. An articulated spatial coordinate measuring arm which comprises:

...

* wherein each of said members comprises:
* an inner tubular shaft having a first end and an opposite second end;
* said first end being fixedly attached to a first one of said joint assemblies at a first end of said member;
* an outer tubular sheath co-axially surrounding said inner tubular shaft, and said sheath having a first extremity and an opposite second extremity;
* said second extremity being fixedly attached to a second one of said joint assemblies at a second end of said member opposite said first end;
* a first bearing rotatively mounting said first end of said shaft proximal to said first extremity of said sheath; and
* a second bearing rotatively mounting said second end of said shaft proximal to said second extremity of said sheath.



**TM-2**

Dem. Ex. 95-B, Nelson Decl. Ex. 4

3. An articulated spatial coordinate measuring arm which comprises:

...

* wherein each of said members comprises:
* an inner tubular shaft having a first end and an opposite second end;
* said first end being fixedly attached to a first one of said joint assemblies at a first end of said member;
* an outer tubular sheath co-axially surrounding said inner tubular shaft, and said sheath having a first extremity and an opposite second extremity;
* said second extremity being fixedly attached to a second one of said joint assemblies at a second end of said member opposite said first end;
* a first bearing rotatively mounting said first end of said shaft proximal to said first extremity of said sheath; and
* a second bearing rotatively mounting said second end of said shaft proximal to said second extremity of said sheath.



**TM-3**

Dem. Ex. 95-C, Nelson Decl., Ex. 5

Romer's experts have thoroughly supported their analysis

1  with detailed explanations to the jury. See, e.g., Nelson
2  Decl., Ex. 6.

3      In Faro's Memorandum of Law in Support of its Motion for
4  Judgment as a Matter of Law, Faro advances no substantive
5  reasons why Romer's infringement analysis is not a fair
6  reading of the claims on to both the preferred embodiment and
7  the accused Faro products.[5]  Faro instead again asks the Court
8  to adopt a labeling scheme invented by Faro, but this labeling
9  scheme cannot form a basis for a finding of noninfringement
10  because Faro has not explained (and cannot explain) how Faro's
11  scheme is consistent with the teachings of the patent.[6]
12  Indeed, Faro's labeling scheme diverges so drastically from
13  the '148 Patent teachings that adoption of Faro's arguments
14  would require a finding that the United States Patent Office,
15  the patent examiner, the patent attorney, and the patentee all
16  failed to draft claims that read on the preferred embodiment
17  disclosed in the '148 patent.

18      **IV. FARO'S MOTION ATTEMPTS TO RE-WRITE THE CLAIMS**
19      In its motion, Faro purports to paraphrase the
20  requirements of the claims:

21  _____

22      [5]    Romer's burden on infringement is not to show that
    no alternative labeling schemes exist; Romer need only show by
23  a preponderance of evidence that the claims read on the
    accused device. See Forest Labs. v. Abbott Labs., 239 F.3d
24  1305, 1312 (Fed. Cir. 2001) ("[Plaintiff] can employ any
    method of analysis that is probative of the fact of
25  infringement.").

26      [6]    Faro may not use differences between the accused
    products and the preferred embodiment to defeat infringement.
27  But if the claims read on the preferred embodiment in the very
    same way they read on the accused device, the infringement
28  analysis is strengthened.

> [T]he '148 Patent is directed to a very specific arrangement in which the arm has *three* transfer members connected end-to-end by *four* joint assemblies, such that the arm moves (bends and/or swivels) in *four* different places.

(Faro Memo. at 3-4). Faro's paraphrase is not only imprecise, it is also self-serving and deceptive. While it is true that each of the four claimed joint assemblies includes at least one joint, Faro's assertion that the claimed "arm moves (bends and/or swivels) in four different places" is incorrect and appears nowhere in the actual language of the claim. Furthermore, Faro's arguments completely ignore how the joints are identified in the description of the preferred embodiment of the '148 Patent.

Faro also attempts to insert a new word into the claims of the '148 Patent. According to Faro:

> No matter how [the parts of the accused device] are labeled and/or named by either party, the components do not meet the required limitations of the asserted claims (requiring four **discrete** joint assemblies to swivel, swivel and hinge, swivel and hinge, and hinge).

(Faro Memo. at 3-4, emphasis added.) Faro's use of the term "discrete" here is in blatant disregard of the actual claim language and, by using it, Faro attempts to revive claim construction arguments that have been repeatedly rejected by the Court in multiple rounds of Markman briefing. The claim language itself requires, for example, "a first joint assembly swivelingly connecting said proximal end of said proximal member to said base." Nelson Decl., Ex. 7. Thus, rather than requiring "discrete" joint assemblies, the claims require joint assemblies to form <u>connections</u> with transfer members.

## V.  FARO'S MOUNTING PLATE ARGUMENT IS MERELY AN IRRELEVANT ALTERNATIVE LABELING SCHEME

One example of Faro's attempts to advance an alternative labeling scheme relates to Faro's labeling of a black mounting plate as the only component that can be "the supporting base." (See Faro Mem. at 4:23-5:3). Faro advanced this same argument during Summary Judgment briefing and it was rejected by the Court.[7] This argument is wrong now for all the same reasons it was wrong then.[8]

One reason that Faro's argument is wrong is that through it, Faro improperly attempts to insert additional limitations into the claims that are inconsistent with the Court's claim construction.[9] Faro's new gloss on this argument is to argue that while what Romer has identified may be a "base," it is not a "supporting base" because it alone cannot grant ultimate stability for measurement. However, adding this requirement to the claims would just as readily disqualify Faro's black mounting plate from being a "supporting base," because it must, in turn, be attached to something to achieve stability.[10]

---

[7]    Nelson Decl., Ex. 1. See also Ex. 8 at 67:8-68:8.

[8]    Romer hereby incorporates by reference all of the arguments included in Plaintiffs' Confidential Opp'n to Defendant's Supp'l Motion for S.J. of Non-Infringement of U.S. Pat. No. 5,829,148, Nelson Decl., Ex. 9. See also Nelson Decl., Ex. 10 for an excerpt from Romer's presentation to the Court opposing Faro's motion.

[9]    For example, Faro asserts that the base must be a component that, by itself, prevents the arm from "falling over", and that must, on its own, allow the arm to "operate properly". See Faro Mem. at 4:26-5:3; see also Nelson Decl., Ex. 9 at 235-236.

[10]    See, e.g., Trial Transcript, Vol. IV, 198:9-199:18, Nelson Decl., Ex. 11 at 273-274. Indeed, the very arms Faro

1    Another reason Faro's mounting plate argument is wrong is
2    that, as shown by evidence at trial, Faro's own internal and
3    published documents contradict the labeling used by Faro in
4    support of its theory of non-infringement.  For example, the
5    part that Faro labels as the base is referred to in Faro's
6    production drawings not as a "base," but as: "Assembly, Plate,
7    Mounting."[11]  Moreover, the part that Romer's analysis shows to
8    be a base, but which Faro labels as the proximal transfer
9    member, is referred to in Faro's production drawings as:
10   "Base, 6' thru 12' Arm."[12]

11   Another reason Faro's mounting plate theory is incorrect
12   is that under it, the asserted claims of Romer's '148 Patent
13   would not read on the Patent's own preferred embodiment.[13]  Mr.
14   Cass's assertion to a witness during trial that "You need
15   something to help hold this thing because it's not going to
16   function unless you got another component" (Trial Transcript
17   Vol. III, 268:19-21, Nelson Decl., Ex. 11 at 262) would apply
18   equally to the preferred embodiment disclosed by the '148
19   patent and shown in Figure 1 of that patent.  Thus, ultimate
20

21   has set up in the court room have mounting plates that are
     screwed onto large round wood structures, which in turn rest
22   on plastic rolling carts.

23       [11]   See, e.g., Nelson Decl., Ex. 12, (Trial Exs. 407,
     94, and 275), part number 1001-1023.
24

25       [12]   See, e.g., Nelson Decl., Ex. 13, Trial Exs. 92 &
     272, part number 2859.

26       [13]   Such an interpretation is very likely incorrect.
     See Vitronics, 90 F.3d at 1583 (A claim construction that
27   would not cover a preferred embodiment in the specification
     "is rarely, if ever, correct and would require highly
28   persuasive evidentiary support.")

1  stability cannot and should not be read in to the claims as a
2  requirement to meet the "supporting base" limitation.

3  **VI.  FARO'S LABELING SCHEME COMPLETELY IGNORES THE TEACHINGS OF
   THE '148 PATENT, WHILE ROMER'S ANALYSIS IS ENTIRELY CONSISTENT
4  WITH THE '148 PATENT'S TEACHINGS**

5      In Faro's arguments for Judgment of "noninfringement" as
6  a Matter of Law, Faro again advances a labeling scheme that is
7  completely at odds with the teachings of the '148 patent[14] and
8  therefore does not present a reasonable alternative to the
9  Court or the Jury.  In contrast, Romer's infringement analysis
10 demonstrates that the claims as construed read directly on to
11 the accused Faro products in a way that is fully consistent
12 with the way the very same claims read on to the preferred
13 embodiment disclosed in the '148 patent.  Thus, the analysis
14 Romer's experts have presented to the jury is more than
15 sufficient to meet Romer's burden at trial.  Furthermore, the
16 fact that Faro can conceive of an alternative reading does not
17 defeat Romer's showing of infringement.

18     As explained above, Faro starts by re-labeling the black
19 mounting plate as the "base."  Faro then continues up the arm,
20 applying its labels.  Not surprisingly, by starting at one end
21 and labeling an accessory as "the base," Faro can arrive at a
22 scheme that doesn't seem to match the requirements of the
23 claims.  Faro's labeling scheme, however, rejects everything
24 taught by the patent and everything understood by the patent
25 examiner and patentee as they were drafting the patent,

26 ─────────────────

27     [14]  The differences are not forced, either by the claim
   language of the '148 patent itself or by the Court's claim
28 construction, as shown by Romer's analysis.

1  including its claims.

2  A.   The 1st Joint Assembly is Present in the Accused Products

3       According to Faro, "even if one assumes that the

4  cylindrical component is the supporting base, there still is

5  no infringement" because "the first (swiveling) joint assembly

6  does not connect a proximal transfer member to the base as

7  expressly required by the claims."   Faro Mem. at 5:4-13.

8  Faro's assertion depends, once again, on acceptance of Faro's

9  own alternative labeling scheme, because Faro does not attempt

10 to confront the clear testimony of Romer's experts at trial.

11      At trial, Romer's experts have shown and described to the

12 jury where the first joint assembly (JA-1) is located in the

13 accused FaroArm under their expert analysis:



Excerpt from Dem. Ex. 91, Nelson Decl., Ex. 14.

26 This figure, from the presentation of Romer's experts at

27 trial, also identifies the base (B) and the first transfer

28 member (TM-1), with JA-1 forming the swiveling connection

1 between the base and the proximal end of TM-1. Faro simply
2 ignores this analysis and does not attempt to argue that
3 Romers' experts' reading of the claims onto the accused device
4 is in any way inconsistent with the teachings of the '148
5 Patent. Instead, Faro simply attempts to re-label a portion
6 of the arm, equating what Faro calls the "first swiveling
7 cartridge" with a swivel "joint."[15] Thus, even though Faro's
8 "cartridge" has features such as an inner shaft and an outer
9 sheath, bearings, etc., that make it a reasonable candidate
10 for a "transfer member" as that term is used in the patent,
11 Faro instead states that the cartridge is "in the first joint
12 assembly" and that it is "not connected to a transfer member."
13 Faro Mem. at 5:8-9.

14 B. **Faro Misidentifies The Swivel Joints**

15 Faro's labeling scheme ignores the teachings of the '148
16 patent's specification, labeling "bearing cartridges"
17 (including the bearings at both ends of these cartridges) as
18 the "swivel joints".[16] The '148 patent labels the swivel
19 joints as shown below (left). The reference numerals 7a, 7c,
20 and 7e label the '148 patent's swivel joints which correspond
21 to the second (or proximal) bearings and which do not include
22 the first (or distal) bearings. In contrast, applying Faro's
23 joint labels to the preferred embodiment results in the

24 _____

25     [15]    See Faro Mem. at 5:8-13.

26     [16]    Faro: "One of the bearing cartridges provides a
swiveling joint within the joint assembly. The other bearing
27 cartridge provides a hinging joint within that same joint
assembly." Def's Mem. in supp't of Its Supp'l Mot. for S.J.
28 of Non-Infringement, filed Nov. 7, 2005, p. 5, lines 6-7.

1  different and inconsistent joint labels shown below (right),

2  which show joints as the entire structure, all the way from

3  the first (or distal) bearings to the second bearings:



**FIG. 2A**

The '148 Patent's Swivel Joints
App. A at 1 & 3.

**FIG. 2A**

"Swivel Joints" Under Faro's Scheme
App. A at 2 & 3.

17     Thus, the joints of Faro's labeling scheme are directly

18  at odds with the joints identified in the '148 patent.

19  Indeed, Faro's labels contradict the teachings of the '148

20  Patent to the point that, under Faro's labeling scheme, even

21  the preferred embodiment would not satisfy the claim

22  limitations.

23     Thus Faro is incorrect that "[t]he first swiveling

24  cartridge (located at the bottom of the Arm) in the first

25  joint assembly is not connected to a transfer member"; under

26  the '148 Patent, only the proximal bearing, not the entire

27  cartridge, is the swiveling joint.

28     Romer's experts have shown how the first joint assembly

1   connects the base to the first transfer member as required by
2   the asserted claims. Faro attacks Romer's infringement
3   analysis because the component Romer identifies as a "base"
4   fits snuggly around Faro's bearing cartridge.[17] However, this
5   snug design does not detract from Romer's infringement
6   analysis.[18] Indeed, that the base has such an extensive, snug
7   overlap with first joint assembly and the transfer member
8   allows the base to perform its supporting function
9   effectively. Faro asserts that because the components Romer
10  identifies as the proximal transfer member are "positioned
11  inside the base," there is "no evidence to establish that the
12  first transfer member is swivelingly connected at its proximal
13  end to the base as the claims require."



App. A at 4.          App. A at 5.

23  Faro is incorrect, because, as these figures show, the base is

[17]    See Faro Mem. at 7:9-12.

[18]    Indeed, it is Faro's labeling scheme that would
    cause transfer members to be illogically subsumed in joint
    assemblies. See Ex. 9 at 174, App. A at 2,3,7&9, and section
    VI(C)(1) below.

1  bonded (or glued) to the outer tubular sheath of the proximal
2  transfer member, just as the base is bolted to the outer
3  tubular sheath in the preferred embodiment.   Similarly, in
4  both the accused device and the preferred embodiment, the base
5  has a swiveling connection, through the encoder, with the
6  inner tubular shaft of the proximal transfer member.

7  C.   **Faro's Labeling Of Joint Assemblies Directly Contradicts
       The Teachings Of The '148 Patent**
8          Faro states that Romer has no choice but to "carve up"
9  the accused device "in a bizarre fashion" and asserts that
10 Romer "dissects the FaroArm's joint assemblies and transfer
11 members arbitrarily."   However, Romer's experts have used two
12 objective, highly-relevant criteria in their analysis: 1) Can
13 the claim limitations be read on to the accused device?; and
14 2) Is that particular way of reading the limitations on the
15 accused device consistent with the way the claims would read
16 on to the preferred embodiment?   In contrast, Faro accuses
17 Romer of ignoring the "actual operation" of the FaroArm device
18 and appeals to the "functional relationship" of components in
19 the accused products.   Faro Mem. at 6:22; 7:4.   But the terms
20 "actual operation" and "functional relationship" to not appear
21 in the claims and are legally irrelevant.   Romer has exceeded
22 its burden of showing infringement, and Faro presents no
23 reasonable alternative.

24     1.   **Faro's Joint Groupings Would Prevent The Patent
            Claims From Reading On The Preferred Embodiment**
25

26     As explained above, the "joints" Faro identifies are not
27 consistent with the joints identified in the preferred
28 embodiment of the '148 Patent.   But this is not the only

1  problem with Faro's labeling scheme.  Faro's grouping of the

2  accused products' joints also defies the patent's own joint

3  assembly groupings.[19]   Only Faro's extensive series of

4  assumptions, which directly contradict the teachings of the

5  '148 patent, can lead to Faro's assertion that the accused

6  Faro products only have two transfer members and three

7  additional joint assemblies. Faro Mem. at 5:16-17.

8      Faro's assumptions diverge from the '148 patent's

9  teachings by including both the proximal and distal bearings

10  in Faro's swivel joint, as discussed above.  Extrapolating

11  further from this false premise, Faro then incorrectly groups

12  the misidentified joints into three assemblies to arrive at

13  its labeling scheme.  Faro does not even argue that the

14  Court's claim construction requires such a grouping, but

15  instead invents the scheme from whole cloth.

16      If the assumptions of Faro's labeling scheme were applied

17  to the preferred embodiment of the '148 patent (as shown in

18  the middle figure), even the preferred embodiment would only

19  have three joint assemblies.  Faro's scheme is shown at the

20  left, and the '148 patent's joint assembly groupings are shown

21  at the right for comparison:

22  / / /

23  / / /

24  / / /

25  _____

26      [19]  One underlying assumption of Faro's joint grouping
   is that the joint assemblies must have a certain relative
27  length with respect to the transfer members. However, neither
   the specification, the claims, nor the Court's claim
28  construction are limited in this way.









| Faro's "Joint Assemblies" Labeling Scheme | Faro's "Joint Assemblies" Of The Preferred Embodiment | The '148 Patent's Joint Assemblies |
|---|---|---|
| App. A at 6 & 9. | App. A at 7 & 9. | App. A at 8 & 9. |

As the above figures demonstrate, when Faro's labeling scheme is applied to the preferred embodiment, that embodiment becomes three joint assemblies (labeled X, Y, and Z), <u>with no connected transfer members</u>. This is evidence of a problem with Faro's labeling scheme, not a problem with the '148 Patent.

D.  <u>Romer's Infringement Analysis Is Entirely Consistent With The Teachings Of The '148 Patent Regarding Joint Assemblies</u>

Whereas Faro's scheme is built incrementally on assumptions that are at odds with the '148 patent's teachings, Romer's infringement analysis considers both the claim limitations and patent teachings and reads the claims consistently onto <u>both the preferred embodiment and the accused Faro products</u>. The preferred embodiment has the claimed joint sequence, as shown in the figure at the left. The preferred embodiment also exhibits the claimed joint

1  assembly configuration (**swivel - hinge/swivel - hinge/swivel -**
2  **hinge**), as shown in the middle figure.  This same joint
3  sequence and joint assembly configuration is also present in
4  the accused Faro device, as shown in the figure at the right:



| The '148 Patent's Joints | The '148 Patent's Joint Assemblies | The FaroArm's Joint Assemblies |
| --- | --- | --- |
| App. A at 10 & 13. | App. A at 11 & 13. | App. A at 12 & 13. |

16      Faro attacks Romer's analysis (shown at right) as an
17  "arbitrary dissection" of the arm, but Romer's experts do not
18  advocate cutting the arm apart and placing the joint
19  assemblies and transfer members into different baskets.
20  Indeed, such a physical separation is not required for—or
21  relevant to—the proper infringement analysis.  At trial,
22  Romer's experts have properly identified portions of the
23  accused device that meet the claim limitations.  Faro
24  disparages Romer's analysis because the second joint assembly
25  groups a bearing from one cartridge with a bearing from
26  another "remotely located, independent" cartridge.  Faro Mem.
27  at 5:22.  But the claim language does not say anything about
28  how far apart the bearings must be or that they must be

1  "functionally related" or "pre-loaded" against each other.

2  Furthermore, bearings grouped in the joint assemblies of the

3  preferred embodiment also rotate "independently" because the

4  second and third joint assemblies each connect two different

5  transfer members.  Thus, Faro's attack on Romer's analysis has

6  nothing at all to do with the actual limitations of the claims

7  themselves.

8  E.   **Unlike Romer's Analysis, Faro's Labeling Of The Transfer
        Members Contradicts The '148 Patent's Express Teachings**
9       **Regarding Transfer Members**

10      Faro asserts that "there is nothing in the '148 Patent or

11 in the Court's Claim Construction Order to suggest that the

12 long, rigid, cylindrical shafts between joint assemblies are

13 anything other than transfer members."  Faro Mem. at 7.  Thus,

14 Faro's labeling scheme groups adjacent FaroArm transfer

15 casings into the so-called "joint assemblies", and then labels

16 the supporting tubes of the FaroArm as the so-called "transfer

17 members".  This scheme, however, blatantly ignores the '148

18 patent's teachings about transfer members.[20]

19      Faro's labeling scheme ignores that the '148 patent

20 teaches that a transfer member has a first bearing at one end

21 (the distal end) and a second bearing at the other end (the

22 proximal end),[21] as shown below.  Faro's transfer cases

23

24      [20]  This does not suggest that all the teachings of the
25 '148 patent should be considered claim limitations, but given
   a choice between an analysis that is consistent with those
26 teachings and a labeling scheme that systematically
   controverts them, the former should control.
27
        [21]  See Nelson Decl, Ex. 7, Col. 4:61-5:2 ("Each
28 transfer member 4 is in the form of a dual concentric tubular
   structure having an inner tubular shaft 30 rotatively mounted

1 identified by Romer's analysis meet this description, but

2 Faro's tubes do not, as shown at right:

  

FIG. 2A

| The '148 Patent's Transfer Members & Bearings | The FaroArm's Transfer Members | The FaroArm's "Transfer Cases" & Bearings |
|---|---|---|
| App. A at 14 & 17. | App. A at 15 & 17. | App. A at 16 & 17. |

15 The tubes (or so-called "transfer members") of Faro's labeling

16 scheme do not have any bearings. Thus, even on its face,

17 Faro's labeling scheme defies the teachings of the '148 patent

18 regarding positioning the bearings in the transfer members.

19   The transfer members Romer identifies are consistent with

20 the '148 Patent teaching that the second bearing of the

21 transfer member includes a slip-ring sub-assembly[22]; the tubes

22 of Faro's labeling scheme are not.[23]

23 _____

24 coaxially within an outer tubular sheath 31 by means of a
first bearing 32 mounted proximately to a first end of the
25 member 4 adjacent to a hinge joint 7d, and a second bearing
comprising a slip-ring sub-assembly 15 in combination with the
26 encoder 17c of an adjacent swiveling joint 7c located at an
opposite end of the member.").

27     [22]   See Nelson Decl., Ex. 7, Col. 4:61-5:2.

28     [23]   See Nelson Decl., Ex. 9 for an illustration of this.

1    The transfer members Romer identifies are consistent with

2    the '148 Patent teaching that, in a preferred embodiment,

3    "[e]ach transfer member 4 is in the form of a <u>dual concentric</u>

4    <u>tubular structure</u> having an inner tubular shaft 30 ...

5    rotatively mounted coaxially within an outer tubular sheath

6    31"[24]; the tubes of Faro's labeling scheme are not:

 

**FIG. 2A**

The '148 Patent's Transfer
Members, Sheaths & Shafts
App. A at 18 & 21.

The FaroArm's Transfer
Member, Sheath & Shaft
App. A at 19 & 21;

The FaroArm's "Transfer
Cases", "Housings" & "Shafts"
App. A at 20 & 21.

19    The transfer members Romer identifies are consistent with

19   the '148 Patent teaching that, in a preferred embodiment, the

20   second end of each transfer member is operatively associated

21   with an encoder.[25]  Although Faro's products include transfer

22   cases that meet this description perfectly, Faro's labeling

23   scheme avoids identifying those components as transfer

24   members.[26]

25   _____

26    [24]   Nelson Decl., Ex. 7, Col. 4:59-64 (emphasis added).

27    [25]   See Nelson Decl., Ex. 7, Col. 4:59-5:2.

28    [26]   See Ex. 9 for an illustration of this point.



FIG. 2A



"Swivel Joint"

"Swivel Joint"

"Swivel Joint"

☐ Swivel Joint (Faro's scheme)
◯ Transfer Member
◯ Joint

FIG. 2A

Appendix A Page 2 of 21



FIG. 2A

FIG. 2A

Base Connections In

The Preferred Embodiment

Inner shaft swivelingly connected to the base ( 2 ) through the slip-ring and encoder

Outer sheath fixedly attached to the base ( 2 ) with bolts

2

7a

17

14

FIG. 2A

A    4    21

# Base Connections In The FaroArm

Inner shaft **swivelingly** connected to the base through the slip-ring and encoder



Outer sheath **fixedly** attached to the base with **glue**

Appendix A Page 5 of 21





Z
hinge +
unlimited
swivel

Y
hinge +
unlimited
swivel

X
hinge +
unlimited
swivel

Joint Assembly (Faro's scheme)

Transfer Member ('148 patent)

Joint ('148 patent)

FIG. 2A

Appendix A Page 7 of 21



FIG. 2A



FIG. 2A

Joint Assembly ('148 patent)
Transfer Member
Joint

FIG. 2A

Joint Assembly (Faro's scheme)
Transfer Member ('148 patent)
Joint ('148 patent)



**FIG. 2A**

Appendix A Page 10 of 21



**FIG. 2A**





FIG. 2A

FIG. 2A



Bearings

Transfer Member

*FIG. 2A*







FIG. 2A



**FIG. 2A**



**Outer Sheath**

**Inner Shaft**





FIG. 2A

1  For at least these reasons, Faro is incorrect in

2  asserting that "there is nothing in the '148 Patent ... to

3  suggest that the long, rigid, cylindrical shafts ... are

4  anything other than transfer members...." Faro Mem. at 7:6-8.

5  ## VII. FARO'S ARGUMENT REGARDING THE PROBE CONNECTION IS INCORRECT AS A MATTER OF LAW

6  As explained by Romer's experts, the probe of the FaroArm

7  is "hingedly connected" to the distal transfer member, as

8  required by the asserted patent claims. Faro agrees that, at

9  the least, the probe is hingedly connected.[27] Arguing based on

10  its own labeling and grouping of the FaroArm's joints, Faro

11  asserts that the FaroArm probe is hingedly and swivelingly

12  connected to the rest of the FaroArm. Faro concludes that the

13  FaroArm does not meet the limitation of the asserted claims

14  that the probe be hingedly connected to the rest of the arm.

15  Faro's argument contradicts a basic principle of patent

16  law: the presence of an additional element in a device does

17  not result in non-infringement if all the limitations in the

18  claims are present in the accused device.[28] Claims 1, 2, and 3

19  of the '148 patent require that the probe be "hingedly

20  connected"; the claims do not specify that the probe must

21  "only" be hingedly connected.[29] Even if Faro's description of

22

23  [27]   Faro Mem. at 7:18, 8:4-7.

24  [28]   Northern Telecom Ltd. v. Samsung Elecs. Co., 215

25  F.3d 1281, 1297 (Fed. Cir. 2000); see also Mannesmann Demag Corp. v. Engineered Metal Prods., Co., 793 F.2d 1279, 1282-83

26  (Fed. Cir. 1986) ("[t]he presence of additional elements is irrelevant if all the claimed elements are present in the

27  accused structure.").

28  [29]   Nelson Decl., Ex. 7 at 16, col. 10, lines 33-35, and at 17 col. 11, lines 1-3.

1  the way the probe connects to the FaroArm were correct (and it

2  is not), the FaroArm would still meet the requirements of the

3  claims because the probe would be <u>at least</u> hingedly connected

4  to the arm.   The addition of another degree of freedom (or

5  indeed any other feature) would not prevent the FaroArm from

6  meeting this particular claim limitation if its probe is

7  hingedly connected to the rest of the arm.

8       **VIII.  <u>FARO'S SOFTWARE CHANGE DOES NOT AFFECT THE**

9          **INFRINGEMENT ANALYSIS</u>**

10      Faro    asserts    that    its    software    change    avoids

11  infringement.[30]    However,   Faro's   assertions   are   legally

12  insufficient to avoid infringement.[31]

13      Faro's software change is legally insufficient for the

14  following reasons: 1) the structure of the accused producs

15  infringes,   not   the   software;   2)   The   FaroArm   remains   an

16  infringing   device   at   all   times,   even   when   not   actively

17  measuring; 3) the preamble of the asserted claims does not

18  limit  the  claims;  the  FaroArm  is  an  articulated  spatial

19  coordinate   measuring   arm,   whether   or   not   it   is   actively

20  measuring; 4) even with the software change, the accused

21  FaroArms' swivel joints still have "at least one degree of

22

23  _____

    [30]    Romer disputes Faro's characterization of the nature
24  and effect of the Faro software change.

25  [31]    Romer also incorporates by reference all of the
    arguments explaining why Faro's software change does not
26  affect infringement included in <u>Plaintiffs' Memo of P's and</u>
    <u>A's In Supp. of Plaintiff's Mot. for Suppl'n of the Court's</u>
27  <u>Order Granting S.J. of Inf't</u>, and <u>Plaintiffs' Reply to Def's</u>
    <u>Opp'n to Plaintiff's Mot. for Suppl'n of the Court's Order</u>
28  <u>Granting S.J. of Inf't</u>, Nelson Decl., Ex. 15.

1   freedom capable of sweeping through an unlimited arc" and "an

2   unlimited range of swiveling motion";[32] 5) even assuming

3   arguendo that the patent claims require <u>active</u> measuring,

4   temporary "noninfringement" would not absolve an otherwise

5   infringing device; 6) Faro's software change does not address

6   the asserted claims, but instead targets limitations that are

7   present only in other, non-asserted claims; 7) Faro's software

8   change attempts to avoid apparatus claims by changing a method

9   of operation; and 8) The prosecution history does not reveal

10   any surrender of coverage relevant to Faro's software change.

11   
## IX. FARO'S MOTION FOR JUDGMENT OF INVALIDITY FOR INDEFINITENESS AS A MATTER OF LAW SHOULD BE DENIED

12   
13   Faro bears the burden of proving invalidity by clear and

14   convincing evidence. Thus, it is inappropriate for Faro to

15   bring a motion for JMOL on this issue at the close of Romer's

16   case-in-chief.[33] In any case, Faro's motion for JMOL on this

17   issue should be denied for at least[34] the following reasons: 1)

18   Faro has failed to show invalidity by clear and convincing

19   evidence; 2) the test for 'indefiniteness' under 35 U.S.C. §

20   112(2) is "insoluble ambiguity."; 3) claims 1 and 2 have been

21   _____

22   [32]   See, e.g., the trial testimony from Wednesday, November 8, 2006, Allen Sajedi Video Deposition taken August 16, 2006, 238:4-24.

23   
24   [33]   See Fisher-Price, Inc. v. Safety 1st, Inc., 279 F. Supp. 2d 530, 542 (D. Del. 2003), aff'd in relevant part at 109 Fed. Appx. 387, 392-93 (Fed. Cir. 2004). Faro's inability

25   to shoe-horn its labeling scheme into consistency with the patent teachings reveals a problem with Faro's labeling

26   scheme, not a problem with the '148 Patent.

27   [34]   Romer also incorporates all arguments in <u>Plaintiff's Opp'n To Def's Motion for S.J. of Invalidity of Claims 1 and 2

28   of U.S. Pat. No. 5,829,148</u>, Nelson Decl., Ex. 16.

1  construed by the Court and analyzed by both Romer's and Faro's
2  experts, and are thus not "insolubly" ambiguous; 4) Faro
3  ignores the '148 Patent's and the Court's clear distinction
4  between "joints" and "joint assemblies"; 5) Faro ignores the
5  law that the claims as filed are part of the specification[35];
6  6) The patent specification teaches sharing of the slip-ring
7  sub-assemblies between the transfer members and the joint
8  assemblies; 7) the slip-ring sub-assembly is closely
9  associated with the joint, and thus is logically a part of the
10 joint assembly; 8) the slip ring is also a part of the
11 transfer member; 9) the slip-ring sub-assembly is therefore
12 shared by the joint assembly and the transfer member; 10) the
13 inventor contemplated the sharing of the slip-ring sub-
14 assembly between the transfer member and the joint assembly;
15 and 11) The slip-ring sub-assembly functions as a bearing and
16 is shared by transfer members and joint assemblies.
17       //
18       //
19       //
20       //
21       //
22       //
23       //
24       //
25
26

27       [35]  See Hyatt v. Boone, 146 F.3d 1348, 1352 (Fed. Cir.
28 1998).

1                          X.  CONCLUSION

2          For the foregoing reasons, Romer resquests that the Court

3   deny Defendant's Motion for Judgment as a Matter of Law.

4

5

6                              Respectfully submitted,

7                              KNOBBE, MARTENS, OLSON & BEAR, LLP

8

9
    Dated:_____     By: /s/ Philip M. Nelson
10                                  James B. Bear
                                    Brenton R. Babcock
11                                  John W. Holcomb
                                    J. David Evered
12                                  Philip M. Nelson
                                    Attorneys for Plaintiffs CIMCORE
13                                  CORPORATION, ROMER, INC., HOMER
                                    EATON, and HEXAGON METROLOGY, AB
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PROOF OF SERVICE

I am a citizen of the United States of America, and I am employed in the offices of the law firm of Knobbe, Martens, Olson & Bear, LLP in Irvine, California. I am over the age of 18 and not a party to the within action. My business address is 2040 Main Street, Irvine, California 92614. On November 15, 2006 I served **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW** on the parties or their counsel shown below, by placing a true copy thereof in a sealed envelope addressed as follows:

**Via E-mail and Federal Express:**

Richard A. Clegg
SELTZER CAPLAN McMAHON
750 B Street, Suite 2100
San Diego, CA 92101
Telephone (619) 685-3003
Facsimile (619) 685-3100

William J. Cass
CANTOR COLBURN LLP
55 Griffith Road South
Bloomfield, CT 06002
Telephone (860)286-2929
Facsimile (860)286-0115

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on November 15, 2006, at Irvine, California.

/s/ Philip M. Nelson
Philip M. Nelson

3102500

# TABLE OF CONTENTS

Page #s

I.    INTRODUCTION ............................................1

II.   THE LEGAL STANDARD FOR JUDGMENT OF
      NONINFRINGEMENT AS A MATTER OF LAW HAS NOT BEEN
      MET ....................................................2

III.  ROMER HAS MET ITS BURDEN TO DEMONSTRATE
      INFRINGEMENT ...........................................3

IV.   FARO'S MOTION ATTEMPTS TO RE-WRITE THE CLAIMS .........5

V.    FARO'S MOUNTING PLATE ARGUMENT IS MERELY AN
      IRRELEVANT ALTERNATIVE LABELING SCHEME ................7

VI.   FARO'S LABELING SCHEME COMPLETELY IGNORES THE
      TEACHINGS OF THE '148 PATENT, WHILE ROMER'S
      ANALYSIS IS ENTIRELY CONSISTENT WITH THE '148
      PATENT'S TEACHINGS .....................................9

      A.   The 1st joint assembly is present in the
           accused products ................................10

      B.   Faro Misidentifies The Swivel Joints ............11

      C.   Faro's Labeling Of Joint Assemblies Directly
           Contradicts The Teachings Of The '148 Patent ....14

           1.   Faro's Joint Groupings Would Prevent
                The Patent Claims From Reading On The
                Preferred Embodiment ........................14

      D.   Romer's Infringement Analysis Is Entirely
           Consistent With The Teachings Of The '148
           Patent Regarding Joint Assemblies ...............16

      E.   Unlike Romer's Analysis, Faro's Labeling Of
           The Transfer Members Contradicts The '148
           Patent's Express Teachings Regarding
           Transfer Members ................................18

VII.  FARO'S ARGUMENT REGARDING THE PROBE CONNECTION
      IS INCORRECT AS A MATTER OF LAW ......................21

VIII. FARO'S SOFTWARE CHANGE DOES NOT AFFECT THE
      INFRINGEMENT ANALYSIS ................................22

IX.   FARO'S MOTION FOR JUDGMENT OF INVALIDITY FOR
      INDEFINITENESS AS A MATTER OF LAW SHOULD BE
      DENIED ...............................................23

X.    CONCLUSION ...........................................25

## TABLE OF AUTHORITIES

Page #s

Allied Colloids Inc. v. Am. Cyanamid Co.,
64 F.3d 1570 (Fed. Cir. 1995) ...........................3

Anderson v. Liberty Lobby,
477 U.S. 242 (1986) ....................................3

Desper Prods., Inc. v. QSound Labs, Inc.,
157 F.3d 1325 (Fed. Cir. 1998) ........................2

Fisher-Price, Inc. v. Safety 1st, Inc.,
279 F. Supp. 2d 530 (D. Del. 2003) ..................24

Forest Labs. v. Abbott Labs.,
239 F.3d 1305 (Fed. Cir. 2001) ........................6

Hyatt v. Boone,
146 F.3d 1348 (Fed. Cir. 1998) ......................25

Mannesmann Demag Corp. v. Engineered Metal Prods., Co.,
793 F.2d 1279 (Fed. Cir. 1986) ......................22

Modine Mfg. Co. v. United States Int'l Trade Comm'n,
75 F.3d 1545 (Fed. Cir. 1996) .........................2

Northern Telecom Ltd. v. Samsung Elecs. Co.,
215 F.3d 1281 (Fed. Cir. 2000) ......................22

Southwest Software, Inc. v. Harlequin Inc.,
226 F.3d 1280 (Fed. Cir. 2000) .......................3

Vitronics Corp. v. Conceptronic, Inc.,
90 F.3d 1576 (Fed. Cir. 1996) ......................2, 9